Our final case of the day will be Appeal 24-1852. Thorlton v. King and Mr. Richter will begin with oral argument from you on behalf of the appellant. Thank you, your honors, and may it please the court, I represent plaintiff appellant Lacey Thorlton, widow to the wage earner claimant in the Social Security Appeal. Appellant recognizes that this court has embraced a minimal articulation standard when it comes to an ALJ's responsibility in issuing a decision and in supporting the residual functional capacity they assign to a Social Security claimant. However, a minimal articulation standard is different than no articulation whatsoever. And the residual functional capacity conclusion that Joshua Smithson, the original claimant here, would never have been off task as a result of acute pulmonary exacerbations which the ALJ in the body of his decision acknowledged the longitudinal record supported would occur. Or the intense regimen of treatment that Mr. Smithson underwent each day to deal with his pulmonary impairment just to maintain a baseline of day-to-day functioning. And that RFC conclusion lacks in this case any articulation as to why there would not be any time off task for those sorts of exacerbations in the decision and for that reason we likewise So the evidence on your side on that, Mr. Richter, is Mr. Smithson's own testimony about the use of the nebulizer, right? Also the prescription of the nebulizer. The prescription. Yes. Okay. Are those the two aspects of the evidentiary record that you're focused on? Yes. They are. And then additionally, as far as support for exacerbation, there is prescription by the doctors for at-home ventilator use at one point in the record that the judge failed to mention in his decision as well. And the point about the testimony, Mr. Smithson's testimony, is that he testified exactly to how he carried out the four nebulizer treatments per day, how long they took, and when he did them. And the problem is that the ALJ does not mention this testimony. Mr. Richter, wouldn't it really be at most two of these treatments that we're talking about that might impact him? Because he testified that he does one first thing when he wakes up in the morning and then another one before he goes to bed. One he said took place over lunch. There's one, there's nothing in terms of the timing. So it seems... You make a lot about the four treatments in your brief, but it seems like at most what would be relevant here would be the two. So I agree with that, Your Honor. And I think, actually, I think what we would speak to would be three because his testimony was that with the one he did initially in the morning, he had to do that and then it was two or three hours before he could actually get up after doing a nebulizer treatment. But as to the other two, it seems that those would likely take place during the day. And his testimony was that these took about 30 minutes each time. And the reason for that, the reason it took a little bit longer than what a typical nebulizer treatment might take, I think I cited Mayo Clinic in my brief that's saying 5 to 15 minutes for a breathing treatment, was that he had to take multiple solutions, he had to inhale multiple solutions because his insurance had denied the equivalent of those several different solutions that he could just do at one time. So he had to do a few different, inhale a few different solutions to get the effect of the medication that he had had. Mr. Richter, are the administrative proceedings on disability benefit claims like this structured in a way that somebody like Mr. Smithson could have been allowed or could have brought forward evidence from the prescribing physician about the interval between the uses and what was expected as to the use or has he not afforded that opportunity? If the doctor had provided an opinion that said it takes him 30 minutes to do this, he could have provided that, I suppose. But the medical records in the administrative record speak to the... There's a prescription there, there's no question about it, and he testified that he's taking the prescription. And the unstated presumption, which does seem solid, is that he's taking the prescription during waking hours.  Yes, he is. And if you're going to take four of these treatments during waking hours, it's likely that some of those are going to... Maybe two of those will come during the time you'd be working. The reason I ask the question is we see a lot of these appeals where there's a lot of criticism of the ALJ failed to do this and failed to do that. And you think, well, it's a little bit of a two-way street because there's nothing that prevented Mr. Smithson from bringing forward expressly to the ALJ's attention a medical opinion that, yeah, he needs to take this during the day. If he's doing the treatment during the day, it's going to affect his work. So instead, we're here arguing about, well, there's the prescription and he did testify. I think at some point we have to be able to make reasonable inferences that... And also this testimony is under oath. Yeah, it's medical in nature, though. You may have enough here. I'm not saying that. All I'm saying is that we see an awful lot of appeals where it sure looks like the applicant could have done more, unless you're going to take the position that the administrative process forbids him, precludes him from doing more. It's closed to medical opinions. No, it is not closed to medical opinions. I can tell you in practice, obtaining medical opinions isn't always easy. A lot of times doctors are reluctant to fill out something that a lawyer sends to a doctor. But what I can point to here is that there's acknowledgement in the records that his insurance was denying the single use solution that he could inhale and he had to do multiple. I think that probably speaks to credibility of how long it would have taken him to do each prescribed treatment. But again, I think, and I'll wrap up here shortly. But I think one of the biggest problems in this case is that he gave testimony about this regimen. Whether he has a medical opinion or not, I'm not sure why we're even going to have an administrative hearing and have an ALJ issued administrative decision if the judge is not going to confront the claimant's testimony and maybe even question, as you did, Judge Scudder, well, couldn't you have gotten a doctor's opinion? Is there anything you can say that corroborates the regimen you've laid out further? He would need to give a reason for rejecting the credibility of the claimant on this issue. And I'll reserve the rest of my time. Thank you. Very good. Thank you, Mr. Richter. Ms. Siegel will hear from you now. Argument for the appellee. Good morning, Your Honors. We've still got 10 minutes of morning left. Correct. My name is Catherine Siegel. I represent the Commissioner of Social Security in this case. In Social Security disability cases, the claimants carry the burden of proof. And that means that the claimant has the burden of proving their disability by providing supporting evidence. And opposing counsel tries to shift that burden to the administrative law judge by criticizing the decision for not including a discussion of work limits that the claimant failed to prove. And that's the time off task for the nebulizer use. This court does not require an ALJ to address every allegation a claimant might make at the hearing. Is the deficiency here, Ms. Siegel, in your view that because the testimony is Mr. Richter recounted. The testimony is what it is. Correct. And he said what he said. There's no question there's a prescription in the medical record. We can all look at it. That's right. Okay. And then the thing that throws me off about the case a little bit is it does seem to me that the ALJ caught these things, was not oblivious to them. And here's why. Because of the questions that were put to the vocational expert. So there's a question that's put to the vocational expert about assume that somebody has this profile and they would need to be off task twice at 30 minute intervals, you know, during the course of a workday. Are there still, would there still be a jobs available for that person? The ALJ answers no. I'm sorry. The VE answers no. There would be no jobs available. And when I read that, I think to myself, why is the ALJ even asking that question? I believe that was asked by the claimant's counsel on cross-examination, if I'm not mistaken. Okay. That may be right. Okay. Maybe you're right about that. Yeah. Okay. But the reason that question is being asked, whoever asked it, is because it links to the prescription and it links to the claimant's testimony, I think. Why else would it be asked? It is rather a standard question that we get in very many social security cases. So I don't think it was really linked to the nebulizer use, especially, like, there wasn't a discussion about being off task to use the nebulizer. He just said off task. But like for 30 minutes at a time, which just so happens to align with his testimony. That's correct. But in this case... So how does that get accounted for? That's the concern that I have. If the VE says no, no, there are no jobs. You can't be off task like that. Right. And the problem that Mr. Smithson has with that allegation, I mean, he has the testimony at the hearing, but when you look at the medical records, there are no treating physicians that limit his capacity in any way due to his respiratory impairment. None of them give any restrictions on having to take time off task in order to use the nebulizer. And the medical records, they don't establish how long the nebulizer treatments took or what the timing had to be or how often they had to be during the day. They say it's on an as-needed basis. And here, the record reports that there were times when Mr. Smithson did not need to use the nebulizer. In particular, medical records from the treating Dr. Norris in March of 2021 indicated that the acute respiratory condition was inactive and completely resolved, and that the lung exam was completely normal. That's at 797 and 800 of the record. And that evidence showed that the respiratory impairment was actually being adequately managed with use of a trilogy inhaler. And again, in December of 2021, when the claimant went to see his respiratory therapist, nurse practitioner Goolsbee, to refill his inhaler prescription, Mr. Smithson told her that he had no shortness of breath or coughing and was doing well, and he used a trilogy inhaler once a day and albuterol inhaled via nebulizer as needed. That's at 804. So there's some indication in the record that this testimony about using it four times a day, 30 minutes at a time, is not supported in the medical records. And Mr. Smithson's own testimony suggests that it may have been done outside of work hours because he said that he used his nebulizer at the beginning of the day, and that's when he had the most breathing difficulty. He started it very early in the morning, and he said he took it between 4 a.m. and 7 a.m., and then once he took that, he was able to regain his breath, and he was much better. And then he took it again at lunchtime, and in a working world, lunchtime is not considered working hours. That's a break. And then he would take it again later in the day at dinnertime, again, possibly after the workday was concluded, and then at bedtime, which is clearly not during the workday. Did he testify to that third piece, that he would take it at dinnertime? I thought he said... He said between lunch and dinner. Yes. So not... He didn't specify that it had to be that, you know, during the working hours. It was, like, dinnertime. It could have been, you know, at the end of the workday, that he would just sit down and take his nebulizer treatment. So the evidence doesn't prove that he needed these restrictions, and we certainly don't have any doctors who back that up with an opinion. And as far as developing the record, Mr. Smithson was represented by counsel throughout the administrative proceedings, and surely at the hearing as well. He was the same law firm who represented him at the hearing. Before the hearing, his attorney could have submitted forms to his respiratory therapists or to his doctors and asked very specific questions about how long does the nebulizer treatment take? Does it have to be taken during work hours? Does it even have to be as formal as submitting forms? Could you call the doctor and say, I need a two-sentence letter? That would also be an option, but he didn't do that. And that is one of the things that the claimants are called upon to do to prove their cases. They have to prove their restrictions under the Act. That's their responsibility. And where a claimant has failed to prove those limitations, the ALJ is under no obligation to go and explain why he didn't find a disability based on some allegation. He's under an obligation to provide the evidence that supported his residual functional capacity, which the ALJ did hear. He talked about a number of things, there's six different things that he talked about, including the pulmonary function studies, which were moderate, and were confirming that his use of an inhaler improved his symptoms. He relied on... When does that evidence get tendered? So if I have a letter from my doctor saying, you need to use it twice during the work day, and it's two sentences long, do I take that with me to the hearing and hand it to the ALJ? Well, normally they have a five-day rule. They like to see all of the evidence in at least five days before the hearing. Okay, but it's in advance of the hearing that I submit it? Yes.  Yes. And here the hearing was in March of 2022, which was just very shortly before the Administrative Law Judge's decision. So it's toward the end of the period under consideration here. So yeah, so the other things that the Administrative Law Judge considered in determining what capacity the claimant had were things that he said at the hearing, like that he could lift 20 to 30 pounds, and that he was able to walk for a mile without having to stop to use an inhaler. And those things line up with a light work capacity. He also relied on state agency positions that reviewed the record and their light work capacity finding. And he actually added a few more limits to credit some of the claimant's testimony about how long he could stand and walk and things like that. So the substantial evidence supports the ALJ's finding, and he clearly met the standard to allow the court to trace the path of his reasoning and to affirm the Commissioner's decision. Thank you, Ms. Siegel. Mr. Richter, rebuttal argument. Thank you. And I know we've spent quite a bit of time on the nebulizer treatments, but I also want to talk a little bit about the other reason that Mr. Smithson may have been off-task in addition to the actual treatments themselves, which would be something the ALJ acknowledged was supported by the longitudinal record in the decision, acute pulmonary exacerbations. In the time off-task, it would result naturally from someone having something akin to an asthma attack. If the record supports that those happened, there needs to be an explanation then as to why the residual functional capacity doesn't include any time off-task to deal with that. And some evidence that I think probably supports time off-task that Commissioner has not contested that the judge didn't address and hasn't argued that it was harmless that he didn't address was the prescription for at-home ventilator and BiPAP treatments. We're not doctors. We know the seriousness, though, of being on a ventilator and naturally, you know, an inability to do much of anything if you're on a ventilator. Thank you, Mr. Richter. Thank you, Ms. Siegel. The case will be taken under advisement. That'll close our hearings for the day. Thank you. Thank you.